IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| GERALD D. SMITH, | ) | |
| | ) | |
| Petitioner, | ) | 8:17CV278 |
| | ) | |
| v. | ) | |
| | ) | |
| FRED BRITTEN, | ) | MEMORANDUM AND ORDER |
| | ) | |
| Respondent. | ) | |
| | ) | |

Gerald D. Smith (Smith) has filed a timely petition for writ of habeas corpus. The Respondent has answered and filed the relevant state court records.[1] The matter has been briefed. I now deny the petition with prejudice and refuse to issue a certificate of appealability.

In short, all of Smith's claims are procedurally defaulted. With regard to Claims One through Four, I separately and alternatively decide that, given the deference owed the decisions of the state courts, Smith is not entitled to relief.

### *Claims*

Summarized and condensed, Smith has five claims. They are set forth below.

**Claim One:**      Petitioner was denied due process of law when the trial court failed to order, on its own motion, an evaluation of Petitioner for competency purposes.

---

[1] I grant Respondent's motion (filing no. 23) to strike the documents attached to Smith's brief because those documents are already in the record or because Smith has not shown sufficient cause for expansion of the record and I find no basis for doing so under Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts.

**Claim Two**:        Petitioner was denied due process of law and the right to counsel when the trial court allowed Petitioner to represent himself during part of the trial.

**Claim Three**:        Trial counsel was ineffective because trial counsel failed to raise the issue of Petitioner's competency to stand trial.

**Claim Four**:        The trial court denied Petitioner due process of law when the court refused to issue compulsory process to secure the attendance of Petitioner's witnesses.

**Claim Five**:        The trial court denied Petitioner due process of law when the trial court denied a motion for new trial (a) after having been apprised that Oscar Romero was threatening Petitioner in an effort to stop Petitioner from entering into a cooperation agreement; (b) because the trial court would not allow Petitioner to call his trial counsel as a witness; and (c) because the trial court precluded Petitioner from using a video and video equipment during trial while allowing the prosecutor to do so.

### *Background*

I take the background of this case from the thorough but unpublished opinion of the Nebraska Court of Appeals that may be found at filing no. 8-3, to wit:

> Smith was charged with five counts of possession with intent to distribute: amphetamine/methamphetamine. Three of the charges were Class ID felonies, and the other two were Class IC felonies. The charges arose after an informant told the Douglas County Sheriff's Office that an individual, later identified as Smith, was selling methamphetamine from a camper trailer parked in front of a house in Omaha. The informant subsequently made five controlled buys of methamphetamine from Smith, and he was later arrested. The public defender's office was appointed to represent Smith.

At a pretrial hearing, the State informed the trial court of a plea offer that had been made to Smith. The State offered to let Smith plead guilty or no contest to two counts of possession with intent to distribute a controlled substance, both Class II felonies, and the State would refrain from seeking to enhance his sentence under the habitual criminal statute. The trial court explained to Smith the possible consequences of not accepting the plea, should he be convicted of the original charges, in comparison to the potential benefit of the plea offer and gave him time to discuss his decision with his attorney. Smith indicated that he understood what the court was telling him, but that he was rejecting the plea offer and wanted a trial.

Additionally, Smith indicated that he wanted to call his trial counsel as a witness at trial. When the court told him that his counsel could not be a witness, he stated that he would represent himself. The court told him that if he was going to represent himself, his trial counsel would be his legal advisor, which he indicated was fine. The court "strongly suggested" that he allow his trial counsel to represent him based on the charges he was facing. Smith again indicated his desire to call his trial counsel as a witness and stated that he would not be able to do so if she was representing him. The court told him again that his trial counsel, even if not representing him, could not be a witness. The court also again stressed the importance of having legal representation and encouraged him to reconsider his decision. Smith, for a third time, indicated that he wanted to call his counsel as a witness in his defense. The court explained that was not possible based on the attorney/client privilege, which applied whether she was his attorney at trial or not. The court plainly stated, "You can't put her on the stand and ask her questions. She will not be a witness on your behalf." The court further explained that he would be expected to follow courtroom procedure and rules of evidence even though he was representing himself, and he indicated that he understood. Before concluding the hearing, the court again encouraged Smith to reconsider his decision to represent himself and told him if he did change his mind, his trial counsel would be ready to represent him.

A jury trial was held on the five counts of possession with intent to distribute. At the beginning of trial, the court again gave Smith the

opportunity to be represented by counsel, and he refused. Trial proceeded and the State presented its evidence against Smith.

On the second day of trial, during the State's case, Smith asked the court about the status of thirteen witnesses he had attempted to subpoena. He expressed concern that he had not seen any of his witnesses at the courthouse and that he had talked to some of them the night before and they indicated they had not been subpoenaed. The court stated that the issue would be discussed further after the State completed its case, but informed him that no subpoenas were issued.

After the State rested, the court resumed the discussion about Smith's witnesses. The court told him that subpoenas were not issued because the clerk's office did not receive the requests until the first day of trial. The court further explained that the subpoenas were marked "filed after court date," which meant that the clerk's office received the requests for the subpoenas after the date requested. Smith explained that on September 18, an individual from the public defender's office showed him how to fill out his requests for subpoenas and that he followed the instructions he had been given. The court told him again that the requests for subpoenas were sent back because they were received on the same date that Smith was asking to have the individuals subpoenaed. Smith stated that he "filed it to the clerk on the 18th," and the court corrected him, saying that the example he was given was dated September 18. The court explained that the court file shows what Smith filled out and that the clerk's office file- stamped it when they received it. The court further stated that it has to go by what is in the court file and based on the court file, Smith did not file his requests for subpoenas in time. It also explained that even if Smith had correctly filed the subpoena requests, the witnesses would not have been able to testify if their testimony was irrelevant.

The State was given a chance to be heard and it objected to allowing any of the defense witnesses to be called because it had not received a witness list prior to trial, which was a discovery violation. The State further stated that if its objection was overruled, it was asking for a motion in limine challenging the relevancy of the witnesses' testimony. The court then began reviewing Smith's proposed witnesses one by one.

However, after discussing the first witness, the court stated that it was sustaining the State's objection to the witnesses on the ground of a discovery violation, i.e. the witnesses were not endorsed and the State had no notice about the thirteen witnesses he intended to call. Despite sustaining the State's objection, the court then proceeded to go through each of Smith's proposed witnesses and sustained the State's motion in limine in regard to each witness.

Smith proceeded to testify on his own behalf. He also called one witness. When Smith testified, he talked about various topics that had nothing to do with the charges in this case. In regard to the charges, he insisted that he gave the informant Epsom salt, not methamphetamine, during the controlled buys. He also argued that he was arrested for six counts of possession with intent to distribute, rather than five, and that somehow this was significant.

On cross-examination, Smith did not deny accepting money from the informant, but continued to claim that he gave her Epsom salt and not methamphetamine, and that he did so six times, not five. Smith also claimed that the bags containing methamphetamine that were in evidence were not what he sold to the informant. He believed that the Douglas County Sheriff's Office replaced the Epsom salt with methamphetamine.

The jury found Smith guilty on all five counts of possession with intent to distribute: amphetamine/methamphetamine.

About a month after trial, a hearing was held based on letters and motions filed by Smith, one of which was a motion to reappoint his attorney. The court granted Smith's motion to reappoint his trial counsel.

Smith's counsel subsequently filed a motion for new trial and a hearing was held on the motion. Smith testified and explained why he did not accept the plea offer that was made before trial. He testified that on the day of his arrest, he provided information to the Douglas County Sheriff's office which led to the arrest of Oscar Romero the same day. When they were both in jail, Smith asked for "keep separate," which presumably is some sort of order to keep Smith and Romero separated, but that did not happen. As a result, Romero has had daily contact with

Smith pending his trial, and has allegedly made threats against him. Smith testified that Romero told him that he killed his brother-in-law, that he was going to push somebody out into traffic, and that Smith's girlfriend was next. Smith testified that his girlfriend was pushed out into traffic on the interstate. Smith also testified that he changed the food he ate while he was incarcerated because inmates were getting poisoned. He also testified that Romero sent someone to his niece's house and gave each of her children a penny, which he explained means he bought their souls for a penny. Smith testified that Romero also told him that if he took a plea bargain Romero would push Smith's attorney out into traffic. Smith was asking for a new trial on the basis that he felt that he had to try his case without the benefit of counsel because of the threats Romero had made. Smith testified that he notified his counsel by letter prior to trial of the threat Romero made against her. Smith's attorney, however, told the court that she had not learned about the threat against her until after Smith's trial. Counsel argued that because she did not have the information about the threats until after trial, the court should grant the motion for new trial based on newly discovered evidence.

The trial court denied Smith's motion for new trial, finding that grounds for granting the motion, pursuant to Neb. Rev. Stat. § 29-1201 (Reissue 2008), did not exist. Specifically, it found that Smith's testimony about Romero did not meet the criteria for newly discovered evidence, nor was there any irregularity in the proceedings.[2]

Following a determination that Smith was a habitual criminal, the trial court sentenced him to 10 to 15 years' imprisonment on counts I through III, the three sentences to run concurrently; and 10 to 15 years' imprisonment on counts IV and V, the two sentences to run concurrently. The sentences of counts I, II, and III were ordered to run consecutive to the sentences for counts IV and V.

---

[2] The trial court specifically found that there was "nothing in the record to corroborate Mr. Smith's statements regarding any of the interactions between himself and Oscar Romero. Mr. Smith's credibility is questionable at best. The Court does not find Defendant's statements would meet the criteria for newly discovered evidence, nor is there any irregularity in the proceedings. Therefore, the Court does not find a basis for a new trial." (Filing no. 8-7 at CM/ECF p. 17.)

*State v. Smith*, A-16-44, at pp. 1-8 (Neb. Ct. App., Sept. 27, 2016).

Smith had new counsel on appeal. At trial, Smith was represented by a public defender, whereas on appeal Smith was represented by private counsel. (E.g., filing no. 8-4.)

### *Opinion by Nebraska Court of Appeals*

The Court of Appeals opinion (filing no. 8-3, at CM/ECF pp. 9-15) shows that all five claims were presented to the Nebraska Court of Appeals, albeit Claim 5 improperly so. That is: (1) regarding Claim One, the Court of Appeals found that there was no basis in the record to question Smith's competency; (2) regarding Claim Two and the trial court's decision allowing Smith to represent himself for part of the trial, the Court of Appeals found that the record affirmatively established that Smith knowingly and intentionally relinquished his right to counsel; (3) regarding Claim Three and the assertion that trial counsel was ineffective for not seeking a competency examination, the Court of Appeals found that Smith was competent to stand trial and therefore trial counsel could not have been ineffective; (4) regarding Claim Four and the assertion that Smith was denied the right to compulsory process to secure the attendance of witnesses, the Court of Appeals found that Smith's request for the subpoenas was submitted the same day trial commenced thus making it impossible for the process to be served since they commanded appearance on that same date and the request was therefore untimely; (5) regarding Claim Five (a) regarding threats by Romero, the Court of Appeals found that this matter was mentioned in the appellate brief but not argued[3] and therefore defaulted (under regularly applied state court procedural rules); and (6) regarding Claim Five (b) and Claim Five (c) those issues

---

[3] "Smith's motion for new trial alleged that his decision to represent himself was due to threats he received from Romero while incarcerated. In his appellate brief however, Smith discusses his testimony regarding Romero's threats at the motion for new trial, but, argues that he is entitled to a new trial on other grounds." *Id.* at CM/ECF p. 14.

had not been presented to the trial court first and were therefore defaulted on appeal (under regularly applied state court procedural rules).

### *Improper Petition for Further Review*

Proceeding pro se, Smith attempted to petition the Nebraska Supreme Court for further review. (Filing no. 8-6.) The petition is barely legible and, as Respondent suggests, to the extent it can be read it resembles a "stream of consciousness" mode of writing. No brief was submitted.

The Nebraska Court Rules of Appellate Procedure § 2-102(f)(3) state:

> Contents. The petition for further review and supporting memorandum brief shall set forth a separate, concise statement of each error alleged to have been made by the Court of Appeals, all of which must be annotated to the record as required by § 2-109. Each assignment of error shall be separately numbered and paragraphed as required by § 2-109(D)(1)(e). The memorandum brief must discuss the errors assigned.

Strict adherence to the rules regarding review by the Nebraska Supreme Court of decisions of the Court of Appeals is required. *See*, *e.g.*, *State v. Taylor*, 840 N.W.2d 526, 531 (2013) ("It is well established that a petition for further review and supporting memorandum brief must specifically set forth and discuss any error assigned to the Court of Appeals."). Smith's petition was entirely insufficient and failed to give the Nebraska Supreme Court any realistic basis for evaluating the decision of the Court of Appeals. Smith's petition was a nullity. Unsurprisingly, it was denied (filing no. 8-1 at CM/ECF p. 3).

### *Procedural Default*

As set forth in 28 U.S.C. § 2254:

(b)(1)        An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

        (A)    the applicant has exhausted the remedies available in the courts of the State; or

        (B)    (i)    there is an absence of available State corrective process; or

                (ii)    circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A state prisoner must therefore present the substance of each federal constitutional claim to the state courts *before* seeking federal habeas corpus relief. In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented in an appeal to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner. *See Akins v. Kenney*, 410 F.3d 451, 454-55 (8th Cir. 2005).

"In order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir. 2007) (internal citation and quotation marks omitted).

Where "no state court remedy is available for the unexhausted claim—that is, if resort to the state courts would be futile—then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)).

To be precise, a federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### Nebraska Law Relevant to Procedural Default

"A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal." *Hall v. State*, 646 N.W.2d 572, 579 (Neb. 2002). *See also State v. Thorpe*, 858 N.W.2d 880, 887 (Neb. 2015) ("A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, no matter how those issues may be phrased or rephrased."); *State v. Filholm*, 848 N.W.2d 571, 576 (Neb. 2014) ("When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's

ineffective performance which is known to the defendant or is apparent from the record. Otherwise, the issue will be procedurally barred.").

### *Conclusion Regarding Procedural Default*

Smith procedurally defaulted all his claims because he did not provide Nebraska with the opportunity to engage in "one complete round" of appellate review. His petition for further review was nearly incomprehensible and it was a nullity because it did not come close to following the Nebraska Supreme Court's rule on the contents of petitions for further review. Still further, and separately, Claim Five was defaulted in the Court of Appeals because that claim while presented was either not properly briefed or not raised in the trial court as required by Nebraska's regularly applied state rules of procedure.

Furthermore, Smith has failed to demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, and he has failed to show that the failure to consider the claims will result in a fundamental miscarriage of justice. Finally, Smith cannot avoid the procedural default by returning to the Nebraska courts because Nebraska law precludes such review under the circumstances presented here; that is, he cannot present his claims in a state post-conviction action because they were raised on direct appeal.

### *Deference Regarding Claims One through Four*

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court acts contrary to clearly established federal law if it applies a legal rule that

contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

With regard to the deference owed to factual findings of a state court's decision, section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As the Supreme Court noted, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.* However, this high degree of deference only applies where a claim has been adjudicated on the merits by the state court. *See Brown v. Luebbers*, 371 F.3d 458, 460 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.").

Claims One through Four were decided on the merits. After carefully considering the thorough opinion of the Nebraska Court of Appeals, I find and conclude that there is no authority under federal law to overturn the decision whether it is reviewed by me as a matter of law or as a matter of fact.

### *No Certificate of Appealability*

A petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1). The standards for certificates (1) where the district court reaches the merits or (2) where the district court rules on procedural grounds are set forth in *Slack v. McDaniel*, 529 U.S. 473, 484-485 (2000). I have applied the appropriate standard and determined that Petitioner is not entitled to a certificate of appealability.

IT IS ORDERED that:

1.    Respondent's motion to strike (filing no. 23) is granted.

2.    Smith's habeas corpus petition (filing no. 1) is denied and dismissed with prejudice.

3.    No certificate of appealability has been or will be issued.

4.    A separate judgment will be issued.

DATED this 27th day of March, 2018.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge